# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

**FILED**

**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Savannah, Georgia**
*By dreese at 4:14 pm, Mar 30, 2015*

|  |  |  |
|---|---|---|
| In the matter of: | ) | |
| | ) | |
| GRANT ROBERT ROGERS and | ) | Chapter 11 Case |
| ALLISEN NICOLE ROGERS, | ) | |
| | ) | Number 14-40219-EJC |
| *Debtor*s. | ) | |
| | ) | |

## MEMORANDUM OPINION

This case is before the Court on the First Application for Attorney's Fees ("Fee Application") (dckt. 62) filed by the McCallar Law Firm ("McCallar," "Applicant," or "Counsel") seeking "an interim award of attorney's fees pursuant to 11 U.S.C. § 330(a)" for work performed on behalf of Grant Robert Rogers and Allisen Nicole Rogers (collectively, "Debtors") prior to their case being converted from Chapter 13 to Chapter 11. (Dckt. 62.) The Fee Application seeks $12,650.41 in fees and expenses over and above the $3,000.00 retainer paid by the Debtors. (*Id.*) Guy G. Gebhardt, Acting United States Trustee for Region 22 ("U.S. Trustee") objected to the request for additional fees and expenses on two grounds. (Dckt. 95.) First, Counsel's statement making the disclosures required by Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules" or "Rules") reflects Counsel's agreement to represent the Debtors for a flat fee of $3,000.00 and does not disclose an agreement for additional fees based on hourly rates. (*Id.*) Secondly, the U.S.

Trustee argues that because the Debtors were never eligible to be Chapter 13 debtors due to the debt limits of 11 U.S.C. § 109(e),[1] the attorneys' efforts were futile and they are not entitled to any additional compensation as a result. (*Id.*) This matter came on for hearing on September 30, 2014, after which the Court requested that the parties submit briefs.

## I.    JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B). In accordance with Bankruptcy Rule 7052, the Court makes the following findings of fact and conclusions of law.

## II.   FINDINGS OF FACT

### A.   Procedural History

On February 5, 2014, the Debtors filed their Chapter 13 petition and proposed plan to repay creditors. (Dckts. 1, 7.) The plan, as originally filed, proposed monthly payments of $1,350.00 for sixty months. (Dckt. 7.) On March 24, 2014, the Debtors' largest creditor, Bell Resources, Ltd. ("Belle"), filed the Objection to Confirmation of Chapter 13 Plan of Reorganization (dckt. 24), which raised a number of issues with the proposed plan but did not assert that the Debtors' were ineligible for Chapter 13 relief. On April 8, 2014,

---

[1] For this opinion, all section references are to Title 11 of the United States Code ("Bankruptcy Code") unless otherwise indicated.

2

the Debtors filed their Amended Chapter 13 Plan and Motion (dckt. 36), in which they added the following treatment of Belle's claim:

> The Claim of <u>Belle Resources, Ltd.</u> in the approximate amount of $1,882,320.14 is a contingent and unliquidated claim being paid in full outside of this plan by a third-party, Wetdog, LLC, pursuant to a confirmed[2] Chapter 11 Plan in Case No. 13-40601-EJC, pending in the Southern District of Georgia, Savannah Division. This claim shall receive payments from Wetdog, LLC pursuant to the confirmed plan in that case and shall not be entitled to share in any distribution to creditors under this plan.

(*Id.* (footnote added).)

On April 11, 2014, O. Byron Meredith III, the Chapter 13 Trustee ("<u>Chapter 13 Trustee</u>") objected to the confirmation of the Debtors' plan. (Dckt. 41.) The Chapter 13 Trustee's objection outlined the need for additional information, questioned the Debtors' calculation of disposable income, and asserted that the Debtors' non-exempt equity in various assets may require additional plan payments. (*Id.*) Like Belle's objection, the Chapter 13 Trustee's objection also did not assert that the Debtors' were ineligible for Chapter 13 relief.

On May 2, 2014, Belle filed its Objection to Confirmation of Amended Chapter 13 Plan of Reorganization and Motion to Convert and/or Dismiss (dckt. 44). In this new objection, Belle *did* assert, as grounds for dismissal or conversion, the Debtors' ineligibility due to the debt limits of § 109(e). (*Id.*) At a June 17, 2014 confirmation hearing, the eligibility issue was argued at some length by the parties, and the Court took the matter under

---

[2] This amended plan provision was filed on April 8, 2014, but Wetdog, LLC's Chapter 11 plan was not confirmed until September 8, 2014. Therefore, the references to a confirmed plan were anticipatory.

3

advisement.

Before the Court ruled on the § 109(e) issue, on August 5, 2014, McCallar, acting on behalf of the Debtors, moved to convert the Debtors' case from one under Chapter 13 to one under Chapter 11. (Dckt. 63.) On that same day, the Debtors filed the Stipulation and Notice of Substitution of Counsel (dckt. 64), which notified the Court and parties in interest that the Debtors would from that point forward be represented by James L. Drake, Jr. ("Drake"). On August 7, 2014, Drake filed the Application to Approve Employment of Attorney (dckt. 66), which the Court approved along with the stipulation regarding the substitution of counsel on August 11, 2014. (Dckts. 70–71.)

McCallar filed the Fee Application on August 5, 2014, together with supporting time and expense records. (Dckt. 62.) On September 26, 2014, the U.S. Trustee filed his objection to the Fee Application. (Dckt. 95.)

**B.    The Debtors' Scheduled Claims**

In their schedules as originally filed, the Debtors listed secured debts in Schedule D totaling $682,465.35, which consisted of a $596,000.00 first mortgage with Wells Fargo - SunTrust Mortgage on their residence, a $74,440.35 second mortgage with SunTrust Bank on the same residence, and a $12,025.00 car loan with Ally Bank. (Dckt. 1.) In Schedule E, the Debtors listed priority tax debts totaling $50,179.00. (*Id.*) None of the debts listed in Schedules D and E were represented to be contingent, disputed, or unliquidated.    (*Id.*)    In Schedule F on the other hand, the Debtors scheduled the

4

overwhelming majority of their unsecured debt as contingent, unliquidated, or disputed.

Table 1: Unsecured Debts

| Creditor | Amount | Contingent/Unliquidated/Disputed |
|----------|--------|----------------------------------|
| Belk | $1,099.00 | |
| Belle Resources, Ltd. | $1,880,000.00 | Contingent, Unliquidated, and Disputed |
| Chase | unknown | |
| JP Morgan Chase Bank | unknown | |
| Saks Fifth Avenue | $344.76 | |
| Small Business Administration[3] | $1,365,762.09 | Contingent and Unliquidated |
| SunTrust Bank | $21,538.00 | |

(*Id.*)  These debts total $3,268,743.85.

Although not listed in Schedule D, the entries regarding the Debtors' unsecured debts to Chase and JP Morgan Chase Bank have a note stating: "Potential Deficiency Claim on Foreclosed House." (*Id.*)  Because the Court is not aware of any other real property owned by the Debtors that is subject to foreclosure (if the automatic stay was not in effect), the Court speculates that these potential deficiency debts relate to the Debtors' residence, which was valued in Schedule A at $600,000.00.  A $70,440.00 deficiency would result if only the amount of debt secured by the residence that is listed in Schedule D was considered. In total, the Debtors' schedules reflect total unsecured debt that is neither contingent nor unliquidated of only $22,981.76, plus any deficiency arising under the first and second

---

[3] The Small Business Administration ("SBA") filed an unsecured claim in the amount of $1,253,554.26 and a duplicate claim for the same amount. (Claims 7, 12.)

AO 72A
(Rev. 8/82)

mortgages.

## C.   Wetdog, LLC's Related Chapter 11 Case

To fully understand the U.S. Trustee's objection to the Fee Application, it is important to address a related bankruptcy case. The Debtors are the sole owners of an entity known as Wetdog, LLC ("Wetdog"), which is the debtor in a separate Chapter 11 case pending in this Court, *In re Wetdog, LLC*, No. 13-40601-EJC (Bankr. S.D. Ga.) (Coleman, J.). Wetdog owns the Foley House Inn, a bed and breakfast located in the historic district of Savannah, Georgia. This business is the Debtors' primary source of income. Wetdog's Chapter 11 case was filed on April 5, 2013, *id.* (Apr. 5, 2013), ECF No. 1, and its plan of reorganization was recently confirmed by this Court on September 8, 2014. *Id.* (Sept. 8, 2014), ECF No. 187. The Rogers' debts to Belle and the Small Business Administration reflected in their Schedule F are Wetdog's debts that have been guaranteed by the Rogers. Wetdog's confirmed Chapter 11 plan proposes to pay Belle's claim in full so that the Rogers will not be required to pay that debt. *Id.* (Jan. 27, 2014), ECF No. 102. In Wetdog's case, the SBA's allowed claim is $1,365,762.09, but under the confirmed plan the claim is secured only in the amount of $1,057,080.90, with the balance of $308,681.19 being unsecured based on the Foley House Inn's value and the priority of SBA's lien. (*Id.*)

The U.S. Trustee argues that the debt to Belle's predecessor, Comerica Bank, was in default when Wetdog filed bankruptcy on April 5, 2013. (Dckt. 95.) Therefore, the U.S. Trustee contends that the Debtors' guaranty obligations became non-contingent by that

6

date in the amount of $1,882,320.14. (*Id.*)  In fact, Belle sued the Rogers on their personal

guaranties in Harris County, Texas (pursuant to a venue provision in the loan agreements)

and obtained a default judgment.  The Texas court did not enter the judgment until after the

Rogers filed their Chapter 13 case on February 5, 2014.  Belle promptly took steps to have

that judgment set aside because it was entered after the automatic stay went into effect.

D.    **The Fee Application**

On August 5, 2014, McCallar filed the Fee Application now being considered

by the Court. (Dckt. 62.)  The Fee Application seeks an award of $12,650.41 in addition to

the $3,000.00 retainer that the Debtors paid prior to the filing of their Chapter 13 petition.

(*Id.*)  The time period covered by the Fee Application is November 18, 2013 through June

24, 2014.[4]  (*Id.*)  The total time listed as being spent by attorneys is 58.75 hours, which is

itemized in a summary attached to the Fee Application.  (*Id.*)  The Fee Application also states

that "[t]here was no written fee agreement entered into prior to the handling of this

Bankruptcy case, however, the Debtors agreed to pay reasonable attorneys' fees at [various

hourly rates]."  (*Id.*)

---

[4] The Fee Application reflects a final time entry of June 24, 2014, but the case
docket reflects significant activity after that date in which McCallar was involved. The
Fee Application is denominated a "First Application" seeking *interim* fees.
Accordingly, it does not appear on its face that this was intended to be a final
application although the circumstances surrounding the conversion to Chapter 11 and
the substitution of counsel shed doubt on the propriety of yet another fee application
being filed.

◆AO 72A
(Rev. 8/82)

### E.    Bankruptcy Rule 2016(b) Disclosures

The Applicant filed its Disclosure of Compensation of Attorney for Debtor(s) ("Rule 2016(b) Disclosure Form") along with the petition and schedules. (Dckt. 1, at 39.) In the first paragraph of that form, the Applicant disclosed that "[f]or legal services, I have agreed to accept . . . $3,000.00" and that the same amount had been received before filing the form. (*Id.*) The form also indicates that the source of the compensation already paid was the Debtors, and that the source of compensation "to be paid" was likewise the Debtors. (*Id.*)

The Applicant did not file a *supplemental* disclosure as contemplated by Bankruptcy Rule 2016(b), and there is nothing in the record to indicate that the Debtors agreed to these additional fees. McCallar testified that he made an agreement with the Debtors to the effect that he would not ask them to pay more than $6,500.00 of any additional fees that might be awarded by the Court.

### F.    U.S. Trustee's Objection

As indicated above, the U.S. Trustee filed an objection to the Fee Application, raising two principal objections: (1) Counsel's failure to obey the mandate of 11 U.S.C. § 329 and Bankruptcy Rule 2016(b) concerning disclosure, and by implication review by the Court, warrants the denial of additional compensation; and (2) reasonable compensation to the Debtors' counsel should be based on the benefit and necessity of such services, and because the Debtors were not eligible for Chapter 13 relief due to the debt limits of 11 U.S.C. § 109(e), the requested fees should be reduced to the extent they exceed the value of the

8

services performed. (Dckt. 95.) Notwithstanding these two objections, the U.S. Trustee does not seek disallowance of the $3,000.00 "no-look" fee paid by the Debtors.

### G.     September 30, 2014 Hearing

The Court conducted a hearing on the Fee Application on September 30, 2014. The U.S. Trustee submitted only two exhibits: the Rule 2016(b) Disclosure Form, and a copy of the Debtors' Schedule F.  C. James McCallar Jr. ("Mr. McCallar"), the only witness, testified that he did not have a written fee agreement with the Debtors. This statement is consistent with the Fee Application. He further testified that he had an understanding with the Debtors that even if he was awarded the full $12,650.41 sought in the Fee Application, he would only ask them to pay an additional $6,500.00.  This accommodation was not disclosed in the Rule 2016(b) Disclosure Form or in the Fee Application.

Based on the Court's review of the time records provided in support of the Fee Application, the Court finds that the work performed by Counsel was adequately described and that the hourly rates charged were appropriate based on the attorneys' years of experience and their concentration in bankruptcy. Likewise, the time entries appear related to the representation of the Debtors in the Chapter 13 case. Whether such work entitles the Applicant to additional fees beyond the $3,000.00 retainer paid by the Debtors will be discussed below.

With regard to the debts owed by the Debtors at the petition date and the issue of eligibility under § 109(e), Mr. McCallar acknowledged that the only thing *contingent*

9

about the Debtors' guaranty of Wetdog's debt to Belle Resources was that the same was to be paid by Wetdog under its Chapter 11 plan, which was not yet confirmed when the Debtors filed bankruptcy. He also acknowledged that Wetdog was in default at the petition date in this case (February 4, 2014) and that no modification of the indebtedness between Wetdog, as the principal obligor, and Belle (or its predecessors in interest) had occurred that would relieve the Debtors of their liability under the guaranty. McCallar suggested that a novation of that obligation had occurred by virtue of the Court's recent confirmation of Wetdog's Chapter 11 plan. But, Belle's counsel argues that Wetdog's plan of reorganization was not consensual as to Belle and consequently could not be construed as a novation.

## III.   CONCLUSIONS OF LAW

The resolution of the U.S. Trustee's objections to the Fee Application involves, *inter alia*, the interplay between Bankruptcy Code §§ 329 and 330, Bankruptcy Rules 1001, 2016, 2017, and 9009, and this Court's General Order Number 2010-3 regarding the so-called no-look fee in Chapter 13 cases. The adequacy and accuracy of Counsel's disclosures will be discussed at some length, but perhaps the larger impediments to granting this Fee Application are: (1) the probable ineligibility of the Debtors to seek relief under Chapter 13 due to the debt limits of 11 U.S.C. § 109(e) (as shown by the voluntary conversion of the case to Chapter 11); and (2) the Applicant's work in this case does not merit compensation in excess of $3,000.00. But leaving those issues aside for the moment, the Court will address first the U.S. Trustee's objections under 11 U.S.C. § 329(a) and Rule 2016(b).

10

## A.   Requirements of Bankruptcy Code § 329(a) and Bankruptcy Rule 2016(b)

Although Chapter 13 debtors are not required to file applications to employ their counsel, the Bankruptcy Code and related rules do provide various disclosure requirements and limitations on compensation for counsel representing Chapter 13 debtors. *In re Harris*, 298 B.R. 319, 320–21 (Bankr. E.D. Tenn. 2003). The starting point in this discussion is § 329, which provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
> >  (1) the estate if the property transferred—
> > >  (A) would have been property of the estate; or
> > >  (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> > > >  (2) the entity that made such payment.

11 U.S.C. § 329. The disclosure requirements of § 329 are in turn implemented by the provisions of Bankruptcy Rule 2016(b):

> **(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the

11

♙AO 72A
(Rev. 8/82)

> compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

Stated another way, Bankruptcy Rule 2016(b) is intended to require the disclosure of fees that a debtor has either already paid or has agreed to pay in the future. The purpose of this disclosure is to permit the Court to evaluate the reasonableness of those fees. *See Goodbar v. Beskin*, No. 5:12cv063, 2013 WL 1249124, at *7 (W.D. Va. Mar. 26, 2013); *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013); *In re Blackburn*, 448 B.R. 28, 40 (Bankr. D. Idaho 2011).

**B.    No Required Form for Making Rule 2016(b) Disclosures**

For many of the requirements of the Bankruptcy Code and related rules, forms have been adopted by the Judicial Conference of the United States that make compliance more uniform and simpler. In this case, the Applicant used a form entitled "Disclosure of Compensation of Attorney For Debtor(s)." (Dckt. 1, at 39.) The background of the form used by Counsel to make its initial Rule 2016(b) disclosures merits some attention. Bankruptcy Rule 1001 provides:

> The Bankruptcy Rules and Forms govern procedure in cases under Title 11 of the United States Code. The rules shall be cited as the Federal Rules of Bankruptcy Procedure and the forms as the Official Bankruptcy Forms. These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding.

Fed. R. Bankr. P. 1001. The use of official forms is mandatory under Bankruptcy Rule 9009:

12

> Except as otherwise provided in Rule 3016(d), the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms for use under the Code. The forms shall be construed to be consistent with these rules and the Code.

Fed. R. Bankr. P. 9009.

The Rule 2016(b) Disclosure Form used by Counsel in this case is *not* an official form. Instead, it is derived[5] from Director's Form B 203, one of the "additional forms" issued by the Director of the Administrative Office, which is not a mandatory form. *See In re Byington*, 454 B.R. 648, 659 n.7 (Bankr. W.D. Va. 2011); *In re Dearborn Constr., Inc.*, No. 02-00508, 2002 WL 31941458, at *11 n.30 (Bankr. D. Idaho Dec. 20, 2002). That is to say, there is nothing in the rules that requires the § 329 and Bankruptcy Rule 2016(b) disclosures to be made using Form B 203. Form B 203 includes instructions, which begin by reciting the applicable law and rules and, at paragraph 6, makes this observation: "[t]he purpose of these reporting requirements is to permit the court to determine whether the compensation exceeds the reasonable value of the services rendered (section 329) or whether the attorney has made an agreement to share compensation that is forbidden by section 504."

More interesting still are the rather simple instructions to the user of Form

---

[5] Counsel's form appears to have been generated by Best Case, LLC, a software program used by McCallar, and differs slightly from Director's Form B 203. The paragraphs are numbered differently because the Best Case form adds a paragraph 2 that reads: "$_____ of the filing fee has been paid."

B 203.  After showing how the case caption should be typed, the instructions conclude:

> The instructions to the rest of the form are self-evident.
>
> Be sure to cross out any services listed in question 5 which will not be provided.  Special care should be taken to complete questions 5(e) and 6 in detail, specifying services to be rendered and not to be rendered.
>
> Additional sheets should be attached to the form as needed.  A copy of the retainer agreement, if any, should be attached to form.

*Instructions, Form B203*, Jud. Conf. of the U.S. (Dec. 1, 2009), *available at*

http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Bk%20Forms%20Dir%201209

/Form_203_Atty_Comp_Disclosure_INSTRUCTIONS_1209.pdf.  Like Form B 203

itself, these instructions are also not mandatory.  With this backdrop, the Court will

examine the fee disclosures made in this case.

**C.    Adequacy and Timing of the Applicant's Fee Disclosures**

The Applicant submitted its Rule 2016(b) Disclosure Form with the Debtors'

petition and schedules.  (Dckt. 1, at 39.) The disclosure accurately shows all of the fees paid

by the Debtors as of the petition date, to-wit: a $3,000.00 retainer.   The disclosure however

makes no reference to hourly rates nor does it appear to contemplate on its face that

additional charges will be billed to the client. The Fee Application filed on August 5, 2014,

on the other hand, recites:

> There was no written fee agreement entered into prior to the handling of this Bankruptcy case, however, Debtors agreed to pay reasonable attorneys' fees at the rates of $375.00 per hour, for C. James McCallar, Jr., $275.00 for Tiffany E. Caron, $200.00 for L. Rachel Wilson, and $115.00 per hour for paralegal fees and to compensate the applicants for reasonable necessary

14

expenses.

(Dckt. 62, at 2.)

Because the Rule 2016(b) disclosures made at the petition date[6] do not make any reference to this unwritten hourly fee arrangement and in fact contained a certification that the disclosures constituted "a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding," the U.S. Trustee, citing *In re Downs*, 103 F.3d 472 (6th Cir. 1996), contends that Counsel failed to comply with Rule 2016(b), and the entire fee should be disallowed.[7]

If Counsel had an agreement with the Debtors *as of the petition date* that they would be charged at an hourly rate for all work performed in the case, then the Court agrees that those terms should have been disclosed. What is unclear from the sparse record in the case is whether the hourly fee arrangement was made later, and if so, when. This question is further complicated by Mr. McCallar's statement at the September 30, 2014 hearing regarding a further agreement where the Debtors would only be required to pay $6,500.00 of any additional fees that the Court might award. In other words, Counsel also had an "agreement" to cut his fees voluntarily as an accommodation to the Debtors.

Based on the representations made by Counsel at the hearing, it is not clear

---

[6] Rule 2016(b) mandates that the disclosures be made within fourteen days after the order for relief.

[7] Notwithstanding this position, the U.S. Trustee does not in fact seek disgorgement of the $3,000.00 retainer.

15

*when* the obligation to supplement the Rule 2016(b) disclosures may have arisen. It is possible that one supplemental disclosure should have been made when the hourly fee structure was agreed to. And, perhaps, another supplemental disclosure should have been made setting forth the agreement to limit McCallar's fees to $6,500.00 above the no-look fee. Any such supplemental agreements should have been disclosed within the fourteen-day time period required by Rule 2016(b), that is within fourteen days of when those agreements were *made*.

The amended disclosures, which this Court will require, should set forth the total fees that the client has agreed to pay. Thus, the amended certification will confirm that the Debtors have *agreed* to pay the Applicant, based on hourly rates, another $12,500.00 or $6,500.00. The amended disclosures should also recite *when* each of these agreements was made. This requirement for the Applicant to amend its Rule 2016(b) disclosures is independent of the Court's disposition of the Fee Application. The Rule 2016(b) disclosures in this case must be made completely and accurately.

In any event, it is clear to the Court that these soon to be amended Rule 2016(b) disclosures will not be timely, that is, they will not have been made within the fourteen-day deadline, a fact which the Court will consider below.

**D.   Sanctions for Inadequate and Untimely Disclosures**

As previously mentioned, the U.S. Trustee, relying on *Downs* and other cases, seeks the denial of all additional fees based on McCallar's failure to disclose any agreement

16

for the payment of attorneys' fees beyond $3,000.00 in its initial Rule 2016(b) disclosures. Although the Court is troubled by the possible omission of the hourly rate agreement from the initial Rule 2016(b) disclosures (again, this hourly rate agreement may have come later), the Court is not inclined to view this omission in the same light as the U.S. Trustee. Importantly, the hourly rate agreement *was* disclosed in the Fee Application itself, and, as discussed above, the form to be used for Rule 2016(b) disclosures is not mandatory.

The Court does agree with the following principle urged in *Downs*: "Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *Downs*, 103 F.3d at 480. Fee disclosures are important to the administration of bankruptcy cases, and Bankruptcy Rule 2017 contemplates the Court's oversight of all such fee arrangements. *See* Fed. R. Bankr. P. 2017. As the U.S. Trustee pointed out, in the absence of disclosure, there can be no oversight of the fees.

This Court, like many others around the country, has adopted a procedure by which a Chapter 13 attorney may charge a flat fee of up to $3,000.00 without that fee being scrutinized by the Court absent objection by a party in interest. This Court's General Order Number 2010-3 provides in relevant part:

> Effective in all Chapter 13 cases filed on or after January 1, 2011, a claim for attorney's fees for services rendered and expenses advanced to a Chapter 13 debtor will be deemed automatically approved by the Court, in the absence of an objection, so long as said claim does not exceed the sum of three

17

AO 72A
(Rev. 8/82)

thousand dollars ($3,000.00). <u>The $3,000.00 fee contemplates appearance by counsel of record for the debtor at the §341 meeting and all hearings.</u>

Debtors' counsel are directed to file written statements pursuant to Federal Rule of Bankruptcy Procedure 2016(b) disclosing the fee arrangement with their clients. Debtors' attorneys may represent debtors for a lesser amount in appropriate cases when the amount and nature of the debts or other relevant factors result in the expenditure of substantially less attorney time than a typical case.

In the event a debtor's attorney subsequently determines that an award of $3,000.00 does not adequately compensate the attorney for legal services rendered, the attorney may petition for reasonable attorney's fees disclosing all time expended in such representation from the beginning of the case under the standards set forth in 11 U.S.C. §330 and <u>Norman v. Housing Authority of the City of Montgomery</u>, 836 F. 2d 1292 (11th Cir. 1988).

The retainer charged by the Applicant did not exceed the no-look fee set forth in the general order, and it was disclosed. In other words, this case does not involve fees paid but not disclosed. True, the hourly fees that the Applicant now seeks should have been reflected in the Rule 2016(b) Disclosure Form if that agreement was in place at the time of filing. Still, Rule 2016(b) contemplates *supplemental* disclosures that should be made "within 14 days after any payment or agreement not previously disclosed." But, there is nothing in the rules that requires the disclosures to be made using Form B 203. In this case, the Fee Application itself sets forth the agreement for hourly fees and arguably complies with § 329 and Rule 2016(b). As stated above, McCallar must amend the disclosures to clarify the timing of any agreements made after the initial disclosures.

The U.S. Trustee urges the Court to deny all fees based on the Rule 2016

18

violation and cites a number of cases in support of that proposition.[8]  However, the Court finds that each Rule 2016 violation must be examined on its own facts.  For example, the facts of *Downs* illustrate the kind of egregious violation of the rule that would justify a total denial of fees:

> The *Futuronics* and *Crimson Investments* cases each stand for the proposition that the bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016.  The authority to do so is inherent, and in the face of such infractions should be wielded forcefully.
>
> In light of this precedent, we conclude that a complete denial of fees is the only appropriate sanction in the instant case.  We are not faced with a simple "technical breach" of § 329 and Rule 2016 here.  Friedman acted affirmatively to conceal his fee arrangement with Heaven Hill and Bourbon-Aid during the [Rule] 2004 examinations of his clients and during the evidentiary hearings on remand. . . .

*In re Downs*, 103 F.3d at 479 (citation omitted).

The case at bar does not involve any undisclosed fees that were actually paid, nor does it involve fees paid by some third party that is not disclosed to the Court.  It is undisputed that McCallar has only been paid the $3,000.00 retainer.  It is true that the prospective hourly rates are not reflected in the Rule 2016(b) Disclosure Form, but the Court

---

[8] *See, e.g., Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881–82 (9th Cir. 1995); *McTyeire v. Hunt (In re McTyeire)*, 357 B.R. 898, 904–05 (Bankr. M.D. Ga. 2006) (Walker, J.) (denying all fees for failure to fully disclose all terms of fee agreement in consumer Chapter 7 case even though the potential for a higher fee could result in only a "nominal" increase in the amount charges).

19

concludes that the Applicant did not necessarily anticipate the need to seek fees in excess of the no-look fee when the same was initially filed. Moreover, the form that Applicant used to make its Rule 2016 disclosures does not provide an obvious place to set forth the manner in which additional fees might be calculated should the scope of work exceed that which was originally contemplated.

In conclusion, the Court will require additional disclosures to satisfy the rule but will decline to reduce fees based on the Rule 2016 violations.[9]

### E.   Debtors' Ineligibility For Chapter 13

Section 330 limits fees to those that are reasonable. In his objection, the U.S. Trustee asserts that the Debtors' ineligibility for Chapter 13 due to the debt limits of § 109(e) made the whole exercise futile.[10] It is true that if either the $1,365,762.09 debt to the SBA or the $1,882,320.14 debt to Belle were both liquidated and noncontingent, then the Debtors' unsecured debt would have easily exceeded the limit set by § 109(e). And it is highly probable, based on the fact that the Debtors voluntarily converted the case to Chapter 11 after Belle raised the issue, that one or both of the debts were liquidated and noncontingent. However, it is unnecessary to determine the specific statuses of the SBA or

---

[9] The Court reserves the right to revisit, *sua sponte*, the issue of whether a sanction is appropriate in this case after proper supplemental disclosure has been provided.

[10] "Only an individual with regular income that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).

◆AO 72A
(Rev. 8/82)

Belle debts or how those statuses affect the Debtors' eligibility for Chapter 13 relief to resolve the question of whether fees should be allowed beyond the $3,000.00. This is because the Court finds that any fees above $3,000.00 are unreasonable under the facts of this case as explained more fully in the section below. The Court agrees with the U.S. Trustee that if the Debtors were ineligible for Chapter 13 relief or simply that the Debtors would be better off by converting the case to Chapter 11, the $3,000.00 no-look fee was adequate compensation for Counsel to come to that conclusion.[11]

F.    **Applicant Is Not Entitled to Fees Above $3,000 Under § 330**

Counsel seeks fees in excess of the $3,000.00 no-look fee. Therefore, its entitlement to fees will be scrutinized under the standards set forth in § 330 and *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). *See* General Order No. 2010-3 (Bankr. S.D. Ga. Dec. 22, 2010).

Bankruptcy Code § 330 provides in relevant part: "In a . . . chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). Those other factors are:

---

[11] Indeed, a review of the time records submitted in support of the Fee Application reflects no time spent in examining the Debtors' eligibility.

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). "The fee applicant bears the burden of establishing the reasonableness of the fee request." *In re Investors Lending Grp., LLC*, No. 11-41963, 2013 WL 3380995, at *3 (Bankr. S.D. Ga. July 8, 2013) (citing *In re Taylor*, 242 B.R. 549, 552 (Bankr. S.D. Ga. 1999) (Davis, J.)).

      *Norman* instructs that reasonable attorneys' fees are to be determined under the "lodestar" method, by multiplying the number of hours reasonably billed by a reasonable hourly rate. *In re W.G. Shuckers, Inc.*, 232 B.R. 524, 527 (Bankr. S.D. Ga. 1999) (Davis, J.) (citing *Norman*, 836 F.2d at 1299). The lodestar is then subject to adjustment based on the "results obtained." *Norman*, 836 F.2d 1302.

      The Court finds that the rates charged by Counsel in this case fall within the range of hourly rates charged by attorneys of similar experience and ability in the Southern District of Georgia. The Court also finds, however, that the number of hours billed by Counsel in this case was unreasonable. *See In re Investors Lending Grp.*, 2013 WL 3380995,

22

at *3 ("[I]n establishing the number of hours reasonably expended, the Court is required to exclude 'excessive, redundant or otherwise unnecessary hours.'" (quoting *In re First Am. Health Care of Ga., Inc.*, 212 B.R. 408, 414 (Bankr. S.D. Ga. 1997) (Davis, J.))).

Belle raised the eligibility issue on May 2, 2014. After that issue was raised, Applicant incurred 4.4 hours through May 8, 2014 reviewing and researching objections to confirmation and meeting with the Debtors to review plan objections. This additional time should have been sufficient to determine whether conversion of the case was either required or simply in the best interest of the Debtors (based in part on the fact that conversion is what ultimately happened on August 5, 2014). (*See* Mot. for Conversion from Ch. 13 to Ch. 11, dckt. 63.) As a result, only the time spent up to and including May 8, 2014 was reasonably expended. Therefore, based on the hourly rates of Counsel, which the Court finds to be reasonable, and the total amount of time reasonably expended, the lodestar in this case is $4,485.00.

Of course, as noted above, the lodestar is subject to adjustment based on the "results obtained." *Norman*, 836 F.2d 1302. The Court finds that the lodestar must be reduced in this case due to the limited success of Counsel in this case. In a case from this District, Judge James D. Walker, Jr. formulated a nonexhaustive list of services that an attorney who accepts the no-look fee is typically obligated to perform:

> 1) Prepare documents on behalf of the client, including preparing and filing the petition and plan, notifying creditors of the stay, filing creditor proofs of claim on the client's behalf, and modifying a confirmed plan;
> 2) Office and telephone conferences with the client or creditors in order to

23

discuss objections to the plan or various claims;
3) Appearance at the section 341 meeting of creditors;
4) Appearance before the Court in the event that lien avoidance, adequate protection, dismissal, stay relief, or claims objection issues become contested matters or adversary proceedings;
5) Appearance at the confirmation hearing if outstanding matters remain unresolved at that time.

*In re Allen*, No. 93-41865, 1995 WL 548855, at *2–3 (Bankr. S.D. Ga. Sept. 12, 1995) (Walker, J.). There were no adversary proceedings in this case, and the time entries submitted by Counsel in support of its Fee Application describe services that fit within the nonexhaustive list outlined by Judge Walker. The Debtors' Chapter 13 plan, which was neither complex nor difficult to propose, was never *confirmed*. The complexity of the eligibility question may have justified some extra work by Counsel, but the records attached to the Fee Application do not reflect that any time was billed for that particular issue around the time the Debtors' original bankruptcy schedules were prepared.

The import of the above discussion of the no-look fee is that in a typical Chapter 13 case, $3,000.00 is reasonable compensation for the attorney to get the case at least through confirmation, which Counsel failed to do. *See In re Beavers*, No. 13-40517, 2014 WL 1424624, at *1–2 (Bankr. S.D. Ga. Apr. 11, 2014) (Davis, J.); *In re Allen*, 1995 WL 548855, at *3 ("If, after an attorney has accepted compensation under the general order, the attorney can show the Court that the additional services rendered *following confirmation* exceed the typical obligations, the Court will award compensation for such additional services under the guidelines of *Norman*." (emphasis added)). The Court finds that a

24

$1,485.00 reduction to the lodestar is appropriate in this case because any compensation greater than $3,000.00 under the facts of this case would be excessive.[12]  *See In re McDonald*, No. 09-10284, at 4 (Bankr. S.D. Ga. Mar. 8, 2011) (Barrett, J.) (noting that it should be the "exceptional" case where an attorney applies for additional fees beyond the no-look fee).

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

Dated at Savannah, Georgia, this 30th day of March, 2015.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia

---

[12] The Court declines to address whether any portion of the $3,000.00 retainer already received by Counsel is unreasonable compensation because, under General Order Number 2010-3, that amount is presumptively reasonable in the absence of an objection and the U.S. Trustee has not objected to that amount.

25